Seward, J. (orally).
This case is submitted to the court upon the pleadings and the evidence. The suit is- brought by the two railway companies—the Columbus, Newark & Zanesville Electric Railway Company and the Ohio Electric Railway Company, against Nelson and his wife, and some man named Bell,’ whose first name is not given in the petition. I do not know why his name is -there. I do not know whether he was brought in by summons -or not, and no allegation seems to be made against him.
The plaintiffs allege that they are the owners of certain real estate abutting upon Buckeye lake for some two thousand feet, and running back a distance of some four hundred feet; that the defendants, Nelsons, are preparing to and will, unless restrained, enter upon the lands of plaintiffs, dig up the ground and erect buildings thereon, without any consent or -authority from the plaintiffs. An injunction was asked and granted.
The answer admits that the plaintiff owns certain real estate, but denies that they have any interest, right or title to these lands. The cross-petition sets up title in the state, and claims that Mrs. Nelson’s rights are based upon a lea4e from the state. She says that she was erecting a pier and certain structures upon lots 48 and 49; charges that the plaintiffs entered upon the same and removed the structures and destroyed the piers, and she prays for an injunction.
The real controversy therefore is as to whether the plaintiffs, or either of them, own the real estate upon which the defendants were erecting their structures or building the piers.
The plaintiffs claim that the matter in dispute is:
1st. As to whether the state of Ohio has title to a strip of ground twelve and twelve one-hundredths feet wide -above and outside of high water mark.
2d. As to what is the present high water-mark.
3d. As to what was the original high water-mark when the reservoir was first built.
The defendants claim that the matter in dispute is not the twelve and twelve one-hundredths foot strip, but whether the plaintiffs owned or had any interest in the ground upon which, she was erecting her structures. She claims, and I think not without good reason ’for it, that -the two buildings,- one larger *58 than the other, were being erected, one of them thirty-six feet below high water-mark; the other thirty feet below high watermark, or substantially that distance, and that the pier was about thirty feet below high water-mark. So, that if her contention is true, neither of these buildings nor the pier approached the twelve and twelve one-hundredths foot strip. And I think she is right about that; I think that neither of •the buildings nor the pier interfered with or approached this twelve and twelve one-hundredths foot strip. This strip is what is claimed as necessary for the berme bank of the canal; and it is claimed to be so because it is necessary to prevent the water of the canal from overflowing. It is claimed by the plaintiffs that that does not apply to the reservoir—to Buckeye lake; but the.court does not think that the twelve ,and twelve one-hundredths foot strip is in controversy in this ease. The plaintiffs claim title through a patent issued to one Holtsberry, in the year 1842, by the United States; that the state never acquired any title to the land patented to Holtsberry. The defendants claim title by lease from the state of Ohio to land taken possession of by the state for canal purposes. There is some controversy as to whether this was for canal purposes or not. The court thinks it was. The reservoir was built and maintained for canal purposes—to feed the Ohio canal. It is not claimed that the state got this by grant; probably in some few instances there might be some deeds from individual owners of the lots, but there are none shown. Whatever title the state got has come not by grant but under the provisions of Section 8 of the act of 1825.
That act recites in substance that it shall be lawful for the canal commissioners to enter upon and take possession of any lands necessary for the prosecution of the improvements, and in case any lands taken possession of shall not be granted or given to the state, it shall be the duty of the commissioners to appoint three appraisers who shall make a just and equitable appraisement or estimate of the loss or damage, etc., and the land so appropriated shall thereby be vested in the state in fee simple; that, within a certain time, the persons whose lands were thus taken by the state, might come in and claim the amount of damage set off by the appraisers; and if they did not do it, the land became the property of the state, and became vested *59 in the state, in fee simple, by.virtue of this section of the statute—Section 8 of the act of 1825.
The 53d O. S., 521, holds that any lands in any manner acquired under the provisions of Section 8 of the act of 1825, became the property of the state in fee simple.
The 53d O. S., 189, 3d syllabus, holds to the same effect:
“By force of the provisions of Section 8 of the act to provide for ‘the internal improvement of the state of Ohio, by navigable canals’ (23 O. L., 57), whenever the state actually occupied a parcel of land for canal purposes, a fee simple title thereto at once, and by virtue alone of such occupancy, vested in the state. ’ ’
The 61st O. S., 201, holds to the same effect.
It is claimed by the plaintiff that the patent to Iioltsberry gave title as against the state, and the question is: What would be the effect of the state taking possession of the lands of the United States?
Under the act of Congress, dated May 24, 1828, shortly after this act of 1825, there was granted to the state 500,000 acres of land without definite description, which was left to be made definite by selection made by the state. That is, the United States G-overnment simply granted 500,000 acres within the boundaries of the state of Ohio, to be used for canal purposes, without definitely describing any of it, or saying in what township or range it was to be located, leaving it to. the state to make the selection; and after the state had made the selection, the land so selected and appropriated by the state became vested in the state of Ohio, and it had a right to sell it to raise money for the purpose of building the canal; and I think had a -right to appropriate it for canal purposes—any land so selected—and the title became vested in the state, in fee simple, by reason of such selection or appropriation.
The 10th O. S., 93, deals with the question involved here as between the rights of Iioltsberry, or his grantee, and the state:
‘ ‘ The fifth and sixth, sections of the act of Congress of May 24, 1828, granting lands to the state of Ohio for the construction of -canals, operated as a present grant, requiring only the identity of the lands to be ascertained to become perfect, while a purchaser from the United States, and holding its patent of lands in fact selected under the sixth section, but not in the *60 precise mode or after the prescribed requisites stated in that section had been complied with, who had no notice of the fact of such selection, might claim to be preferred to a grantee from the state, yet a purchaser, who enters the land and takes a patent, with full knowledge of a selection in fact, a grant by the state, and a possession and improvement under it, hold the land against such grantee.
“The patent from the United States does not' preclude an inquiry into equitable claims held by third persons prior to the patent, and the imperfect execution of the power to grant the lands vested in the state by the act of Congress might create in the" grantee of the state an interest or claim which a court would protect, or legislation might properly confirm; and a party knowingly and intentionally seeking to defeat by an entry and patent, such interest or claim, can not be regarded as holding a.vested right.
‘ ‘ The" right of the state, and the confirmation of the selection by act of Congress, were sufficient to raise a presumption that the selection was in fact such as might give an equitable claim to the grantee- from the state. ’ ’
This is an interesting case on that question, and the court thinks that, under the testimony here, the state having taken possession of this land in 1832, sixteen years before, or at least ten years before Holtsberry -acquired title by patent, that he could not acquire title by patent to the land which the state had before appropriated for the purposes of the reservoir.
And so, the court finds in favor of the defendants in this case.